RALPH S. EVINRUDE and FRANCES L. EVINRUDE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Evinrude v. Commissioner
Docket No. 13135-79.
United States Tax Court
T.C. Memo 1980-454; 1980 Tax Ct. Memo LEXIS 129; 41 T.C.M. (CCH) 159; T.C.M. (RIA) 80454; October 8, 1980, Filed Thomas J. Donnelly, for petitioners. Larry N. Johnson and Edward J. Roepsch, for respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This *131 case was assigned to Special Trial Judge Randolph F. Caldwell, Jr., for hearing and disposition of petitioners' motion for summary judgment and respondent's motion for partial summary judgment. The Court agrees with and adopts the Special Trial Judge's opinion, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE CALDWELL, Special Trial Judge: This case is before the Court to petitioners' motion for summary judgment filed on July 11, 1980, and respondent's motion for partial summary judgment filed on August 14, 1980. The issue presented by both motions is whether certain restrictive language embodied in consents extending the period for assessment and collection does (as contended by respondent) or does not (as contended by petitioners) permit the contested adjustments made by respondent in his notices of deficiency. The motion came on for hearing at the Motions Session on August 27, at which counsel for both sides presented coal argument, at the conclusion of which the motions were taken under advisement. The Court has also been favored by memoranda filed by both sides in support of their respective positions. The term "petitioner," in the singular, will refer *132 to Ralph Evinrude. FINDINGS OF FACT In April 1970, a limited partnership known as Milwaukee Brewers Baseball Club (hereinafter "the partnership") acquired the American League professional baseball franchise, including certain player contracts and other assets, of the Seattle Pilots from Pacific Northwest Sports, Inc., for $10,800,000. The general partner of the partnership is a subchapter S corporation known as Milwaukee Brewers Baseball Club, Inc., (hereinafter, "the corporation"). The partnership and the corporation hereinafter will be referred to collectively as "the Brewers entities." Petitioner's interest as a limited partner was 20 percent during 1970 through 1972, 15.742 percent during 1973, and 15,413 percent during 1974. The corporation had an 18 percent interest in the partnership for the years 1970 through 1973, and a 16.686 percent interest in 1974. Petitioner owned 10 percent of the corporation's stock during 1970 and 1971, 20 percent during 1972 and 1973, and 18.49 percent in 1974. The taxable calendar years of the petitioners which are involved in this case are 1968 and 1970 through 1971 -- the year 1968 being involved by virtue of a net operating loss having *133 been carried back by petitioners to that year from 1971. The partnership's purchase from the Pilots permitted the former to operate an American League franchise in Milwaukee. On its Forms 1065, U.S. Partnership Return of Income, the partnership allocated approximately $10,200,000 of the purchase price to the player contracts, $500,000 to the cost of the franchise, and $100,000 to all other assets. In his audit of the partnership's returns for the periods ended October 31, 1970 through 1974, respondent, among other adjustments not in dispute, disallowed the allocation of cost to the player contracts and the amortization of the same. Consequently, respondent disallowed the deduction of losses and related items resulting from the amortization of player contracts to the partners, including the general partner, the corporation. Accordingly, respondent in the notices of deficiency for petitioners' taxable years 1970 through 1974, as well as 1968 (due to the claimed net operating base carryback) adjusted petitioners' taxable income for the disallowance of the operating losses and other adjustments flowing to petitioners from the partnership. The following disputed items were disallowed *134 by respondent in the notices of deficiency timely mailed to petitioners, pertaining to the Brewers entities: Taxable Years
Description of Adjustment
1968
1970
1971
1971 net operating loss
$299,377.39
Partnership loss
$426,890.00
$496,575.40
Subchapter S loss
21,578.42
56,335.90
Gain, sec. 1231 property
130,129.00
Taxable Years
Description of Adjustment
1972
1973
1974
Partnership loss
$356,413.80
$209,025.00
$170,341.00
Subchapter S loss
52,550.00
48,917.00
34,084.00
Gain, sec. 1231 property
42,499.76
5,655.00
4,209.00
Petitioners contend that none of these adjustments are allowed by the restrictive language embodied in the consents: "This agreement is limited to the tax effect resulting from any adjustment to distributions from Milwaukee Brewers Baseball Club and Milwaukee Brewers Baseball Club, Inc., and includes any amount resulting from statutory computations as recomputations based on such adjustments." (Emphasis supplied.) Petitioners' contention is that the emphasized phrase refers to, and only to, distributions of money or property from the partnership and the corporation, and that none of the adjustments *135 constitute a distribution of that kind. The background leading up to the inclusion of the quoted restrictive language in the consents follows. Petitioners filed timely joint returns, Form 1040, for the taxable years 1968 and 1970 through 1974, which were prepared by the following individuals: Year
Preparer
1968 and 1970
Ruth Penning
1971 and 1972
Ruth Penning and Thomas J. Donnelly
1973 and 1974
Thomas J. Donnelly
Mrs. Penning has been petitioner's secretary and bookkeeper for many years. Mr. Donnelly is petitioners' tax advisor and is their counsel of record in the present case. He also represented the Brewers entities prior to 1974 in connection with an audit by the Internal Revenue Service covering the years 1970, 1971, and 1972. In Donnelly's latter capacity, he requested on May 17, 1973, of the respondent Commissioner of Internal Revenue, a copy of Engineer's Coordination Digest No. 73-1. With a letter dated July 5, 1973, to Donnelly from respondent, he was furnished with a copy of an article entitled "Allocation of Purchase Price Paid for Professional Sports Teams" which appeared in Engineer's Coordination Digest No. 73-1. Prior to July 30, 1973, Donnelly *136 was also notified by revenue agent Frank Freimark as to the recommendation of respondent's valuation engineer, Glen A. Hultquist, with regard to the allocation of the franchise fee paid by the partnership, to the player contracts and the amortization of the same. The petitioners, residents of Florida, were initially contacted concerning the audit of their 1970 joint Federal income tax return by a letter dated August 16, 1972, from Revenue Agent Charles Marley of the Jacksonville District. Petitioners were requested to furnish, among other items, a copy of Forms 1065 and 1120S relating to the Bresers entities for 1970. Thereafter, on or about October 25, 1972, Mrs. Penning notified Marley that the Brewers entities were being audited in the Milwaukee District with respect to the taxable period ended October 31, 1970, and that Donnelly represented petitioners. Petitioners' tax audit was subsequently extended to include the taxable year 1971, as well as the taxable year 1968 (1971 loss carryback year) and was assigned to Revenue Agent Robert E. Sheridan in approximately June 1973. Sheridan prepared a partial report for undisputed issues (not related to the Brewer entities) in *137 June 1973, for the taxable years 1968, 1970, and 1971, which was agreed to by petitioners on June 15, 1973. On January 7, 1974, petitioners executed a general consent (Form 870) for the taxable year 1970, extending the period for assessment to December 31, 1974. On or before April 15, 1974, petitioners filed their 1973 Federal income tax return, which Donnelly signed as preparer. On Schedule E of that return petitioners claimed the amounts of $50,593 and $241,445, respectively, as losses from the Corporation and the partnership. In a letter dated September 12, 1974, Donnelly forwarded the first restricted consent to Sheridan for the taxable years 1970 and 1971, extending the period for assessment to June 30, 1975. In his accompanying letter to Sheridan, Donnelly stated: Pursuant to your understanding with Mrs. Penning, we have inserted language which limits the effect of these waivers to adjustments involving Milwaukee Brewers Baseball Club and Milwaukee Brewers Baseball Club, Inc., inasmuch as these are the only open items and I understand assessments have been made for any deficiencies involved in any other items. The restrictive language in the enclosed consent read, *138 in pertinent part, as follows: This waiver shall be effective only with respect to adjustments involving taxpayers' interest in Milwaukee Brewers Baseball Club and Milwaukee Brewers Baseball Club, Inc. The foregoing consent for 1970 and 1971 was signed by petitioners on September 7, 1974, and by respondent's agent on September 16, 1974. In November 1974, Sheridan Received Forms 918-B, Results of Examination, together with various attached documents relating to the adjustments to petitioners' tax returns for the taxable years 1970 and 1971 resulting from the completed examination of the Brewers' entities for the periods ended October 31, 1970 and 1971. The adjustments to the returns of the Brewers' entities as indicated in the attachments to the Form 918-B, consisted of certain agreed issues as well as certain unagreed issues, which are involved in the present case. On or about January 29, 1975, Sheridan prepared a report involving the agreed issues and unagreed issues concerning the Brewers entities, which he discussed with petitioner and with Mrs. Penning. During his conversation with Mrs. Penning, Sheridan discussed the tax litigation involving the Atlanta Falcons of the *139 National Professional Football League ( Laird v. United States, 391 F. Supp. 656 (N.D. Ga. 1975), aff'd. 556 F.2d 1224 (C.A. 5, 1974), cert. denied 434 U.S. 1014 (1978)), pertaining to the allocation of the purchase price to the player contracts and the amortization of the costs so allocated to the player contracts. At the request of petitioner, Sheridan personally recomputed petitioner's deficiencies as the result of this disallowance of the unagreed items related to the Brewers entities. Sheridan also notified petitioner and Mrs. Penning that the unagreed issue involving the Brewers entities would be held in abeyance pending review of the issues, in accordance with Internal Revenue Manual Supplement 45 G-213, dated September 10, 1974. In a letter, dated February 12, 1975, to petitioner, as a limited partner in the partnership, Peat, Marwick, Mitchell & Co., Certified Public Accountants, who are the public accountants for the Brewers entities, notified petitioner concerning the unagreed issues, as follows: The income tax returns of the Milwaukee Brewers Baseball Club are under examination by the Internal Revenue Service for *140 the fiscal years ended October 30, 1970, 1971, and 1972. A preliminary report has been issued which has proposed adjustments relating principally to the allocation of the purchase price of the Club between player contracts and the franchise. Although the Club as a partnership is not a taxable entity, these adjustments, if sustained, would result in substantial reductions in the losses for income tax purposes of the limited partners, and the shareholders of the general partner, Milwaukee Brewers Baseball Club, Inc. Likewise, in a separate letter to petitioner, as a shareholder in the corporation, dated February 12, 1975, Peat, Marwick, notified petitioner of respondent's proposed adjustments which would affect petitioner's losses for income tax purposes, as follows: The corporation income tax returns of the Milwaukee Brewers Baseball Dlub, Inc. and the partnership returns of the Milwaukee Brewers Baseball Club are under examination by the Internal Revenue Service for the fiscal years ended October 31, 1970, 1971 and 1972. Preliminary reports have been issued which have proposed adjustments relating principally to the distributable loss allocated to the Corporation as the general *141 partner of the Club. The proposed adjustments to the Club relate principally to the allocation of the purchase price of the Club between player contracts and the franchise. Although the Club as a partnership is not a taxable entity, these adjustments, if sustained, would result in substantial reductions in the losses for income tax purposes of the limited partners, and the shareholders of the general partner, Milwaukee Brewers Baseball Club, Inc. By letters dated February 15, 1975, and March 4, 1975, Donnelly notified Mrs. Penning that the petitioner's share of partnership losses for 1974 would be $144,668, except for the limitation therein due to his basis. However, Donnelly wrote, it was likely that petitioners would "claim the full amount of [petitioner's] share of partnership losses [$144,668] for 1974 inasmuch as the Revenue Service claims adjustments which would increase his basis to an amount sufficient to allow these losses." In a letter, dated February 28, 1975, to petitioner, Donnelly discussed the Atlanta Falcons tax case and enclosed an article relative thereto from the Wall Street Journal. In connection with the Brewers entities and the partnership losses *142 to be claimed on petitioners' 1974 Federal income tax return, Donnelly stated: In any event, insofar as the Brewers are concerned, allocation of purchase price to the league TV contract should not be an issue inasmuch as under the conditions by which the franchise was issued, there was no participation by the Brewers in the then existing TV contract. It would, therefore, appear that whatever precedent may have been set by this case would be favorable to the Brewers position. Both sides have announced an intention to appeal, so that it is not likely that the matter will be resolved for another year. I have been considering the question of the position which should be taken in filing your 1974 income tax return. Your share of the loss for 1974 would be $144,668 if there were no limitation on the basis for the your partnership interest. With the limitation, the loss as shown on the Form K-1 is only $58,788. However, the Internal Revenue Service proposes adjustments to prior years which would eliminate the limitation, and would clearly leave you with sufficient basis to claim the full amount of your share of the loss for 1974. As a protective position, it seems desirable to *143 claim the full amount of your share of the loss, without applying a limitation. We don't know at this time what the limitation will be, or if there will by any at all. I am taking this matter up with Ed Fitzgerald and Peat, Marwick, but I thought I should let you and Mrs. Penning know of this possible position at this time. Accordingly, petitioners on their 1974 return filed on or before April 15, 1974, claimed an operating loss on Schedule E from the partnership of $144,668, which was in excess of petitioner's basis for his partnership interest, as well as a loss of $21,012 from the corporation. A statement attached to Part III of Schedule E stated: Deduction for taxpayer's share of losses of Milwaukee Brewers Baseball Club is claimed without regard to limitation on Ralph Evinrude's basis for his partnership interest. Consequently, the loss deduction as claimed differs from the amount reported on Form K-1 filed by Milwaukee Brewers Baseball Club. This is a protective position taken in view of the adjustments alleged by the IRS for prior years which would increase Ralph Evinrude's basis at October 31, 1974 to an amount sufficient to allow deduction of his full share of the *144 losses of Milwaukee Brewers Baseball Club for the year ended October 318 1974. Petitioner did not receive any money or property from the partnership in 1974 on the earlier years and therefore there were no adjustments to his basis for the receipt of property or money from the partnership. By letter, dated April 15, 1973, petitioners were notified by respondent that consideration of their 1968, 1970, and 1971 returns was delayed due to Internal Revenue Manual Supplement 45G-213, which provides that audits involving the allocation of purchase price of professional sports teams should be placed in audit suspense pending the outcome of the Laird case, having to do with the Atlanta Falcons.
In June 1975, Revenye Agent Marino L. Sonzogni prepared an audit report for petitioners' 1972 taxable year with regard to certain agreed adjustments and the unagreed adjustments pertaining to the Brewers entities, as well as certain unrelated adjustments. Deficiencies in tax with respect to agreed issues, both for 1972 and 1973, were agreed to and assessed. In a letter dated July 9, 1975, respondent solicited a combined consent for the years 1970, 1971, and 1972 from petitioners. On August 15, 1975, respondent *145 received a letter dated August 13, 1975, from Mrs. Penning in reply to respondent's July 9 letter, which stated in here pertinent part as follows: I have in my file an unsigned copy of Form 872 with an expiration date of 12/31/75 on which was indicated the following limitations: This waiver shall be effective only with respect to the adjustments involving the taxpayers' interest in Milwaukee Brewers Baseball Club and Milwaukee Brewers Baseball Club, Inc. I would appreciate your sending me a copy of the signed copy of this Consent. The new consent form covering the period through 12/31/76 should also bear this same stipulation and if you confirm this, I will type it on the form enclosed with your letter The parties did not execute the aforementioned combined restricted consent for the taxable years 1970, 1971, and 1972. Instead, petitioners on September 15, 1975, executed a restricted consent for the taxable years 1970 and 1971 and a separate restricted consent for the taxable year 1972. Each restricted consent extended the period for assessment for each taxable year to December 31, 1976. The restrictive language for 1970 and 1971 was the same as the earlier above-quoted *146 language, in the prior consent for those years. However, the restrictive language for 1972 was different, and it was as follows: This agreement is limited to the tax effect resulting from any adjustment to distributions from Milwaukee Brewers Baseball Club and Milwaukee Brewers Baseball Club, Inc. and includes any amount resulting from statutory computations and recomputations based on such adjustments. The provisions of Section 6511(c), Internal Revenue Code of 1954, are limited to any refund or credit resulting from adjustment for which the period for assessment is extended under the agreement. The foregoing language was drafted by personnel of the Internal Revenue Service. By letters dated October 1, 1975, and October 2, 1975, petitioners were notified that consideration of their returns for 1972 and 1973, respectively, was being delayed pending advice from respondent's National Office. In July 1976, Forms 918-B, Results of Examination, dated July 16, 1976, were forwarded by the Milwaukee District to the Jacksonville District concerning the completed examination reports for the Brewers fiscal years ended October 31, 1973 and 1974, relating *147 to petitioners' taxable years 1973 and 1974. In a letter dated July 1, 1976, respondent solicited from petitioners a combined consent for the years 1970, 1971, and 1972, as well as 1973. On or about August 6, 1976, Mrs. Penning forwarded to respondent the combined consent executed by petitioners, which was executed by an agent of respondent on August 30, 1976. Such combined consent extended the period for assessment to December 31, 1977, and contained the new restrictive language used in the previous consent for 1972. On March 28, 1977, Revenue Agent Sonzogni prepared his final report with regard to the unagreed issues for the Brewers entities relating to petitioners' taxable year 1973. The agent's report indicates that the changes had been discussed with petitioner. On or about February 14, 1977, Revenue Agent C. Richard Shackford, who had been assigned to audit petitioners' 1974 and 1975 returns, discussed with Mrs. Penning and petitioner the unagreed adjustments to petitioners' 1973 and 1974 returns relating to the Brewers entities. In a letter dated April 12, 1977, petitioner forwarded to Shackford a combined restricted consent for the years 1970, 1971, 1972, and *148 1973, as well as 1974, signed by petitioners on April 12, 1977, which extended the period for assessment to June 30, 1979. Petitioner stated in the letter of transmittal his understanding of the restrictive language contained in said consent: I understand that the Waiver which you have prepared, and which Mrs. Evinrude and I have signed, "is limited to the tax effect resulting from any adjustment to distributions from Milwaukee Brewers Baseball Club and Milwaukee Brewers Baseball Club, Inc. and includes any amount resulting from statutory computations or recomputations based on such adjustments." "I also understand that our refund rights are similarly limited." Respondent's agent signed the consent on April 14, 1977, and it is this consent which is the subject to the controversy herein. Peat, Marwick, in a letter dated December 2, 1977, to the partners of the partnership, including petitioner, stated concerning respondent's examination of the partnership's returns for the years ended October 31, 1970 through 1974, as follows: Federal Income Tax Examination
In connection with a Federal income tax examination of the Club for the years ended October 31, 1970, 1971 and *149 1972, a report has been issued which has prepared adjustments relating to the allocation of the purchase price of the Club between player contracts and the franchise. A preliminary report has also been issued in connection with a Federal income tax examination of the Club for the years ended October 31, 1973 and 1974, proposing similar adjustments. The Club and the Internal Revenue Service have agreed to place this matter in abeyance pending the outcome of an appeal of a similar matter by an unrelated party. Although the Club as a partnership is not a taxable entity, these adjustments, if sustained, would have a substantial effect on the partners' income for income tax purposes. In February 1979, respondent solicited a second combined restricted consent from petitioners for the years 1970 through 1974. Petitioners by letter dated May 11, 1979, forwarded to respondent executed copies of the combined consent, in which they changed the extended date from, apparently, July 30, 1980, to December 31, 1979. By letter dated May 16, 1979, respondent replied to petitioners, and stated as follows: Enclosed please find new consent forms extending the statutes for the 1970, 1971, 1972, *150 1973 and 1974 tax returns to June 30, 1980. We have voided the prior consent forms you sent us and hereby return copies for your records. This action is necessary due to the fact that consent forms with corrections or changes are considered invalid. Also, we have changed to statute extension date from December 31, 1979 until June 30, 1980, as we are now in the process of securing extensions for the December 1979 statute dates. We cannot accept less than a year on the statute extensions. Please sign and return all of these forms in the enclosed envelope as soon as possible. If we do not hear from you within a few days, we will have to act on your return before the statute of limitations expires. Thereafter on June 25, 1979, petitioners returned the commbined consent to the respondent, which contained the same restrictive language as that contained in the previous combined consent. In addition, there appeared an "ADDENDUM" which reads as follows: It is understood that this waiver shall not apply to the income, gain, loss, deductions or credits of Milwaukee Brewers Baseball Club and Milwaukee Brewers Baseball Club, Inc., except as such adjustments are reflected in amounts *151 distributed, if any, to the undersigned by such entities during the taxable years involved. In this letter transmitting the combined consent, petitioner stated as follows: We have added an Addendum to the consent forms. Our attorney in Milwaukee has suggested that additional language be added to the Limitation in the Consent so as to clarify its meaning. He tells us that questions were raised about the meaning of the Limitation by the Regional Office in Milwaukee a few months ago when waivers were requested by your Milwaukee Office for the year 1975. We have, therefore, added the additional language that he has suggested. We do not believe that this additional language changes the meaning of the Limitation, but we feel it is necessary to clarify it. Respondent refused to accept the "ADDENDUM," and mailed a statutory notice of deficiency to petitioners on June 28, 1979, for 1968 and 1970 through 1974 in which he made adjustments based upon the changed allocations of the purchase price of the Club to player contracts and franchise as well as to the treatment of the losses claimed with respect to the disposition certain section 1231 assets, from those claimed by the partnership *152 on its Forms 1065 for the years October 31, 1970 through 1974. In those notices respondent also made similar adjustments based upon the changes he had made to the returns of the general partner, the corporation, for such years. During the taxable years 1970 through 1974, petitioner did not receive any money or property from the partnership. Petitioner did receive $5,000 and $6,845 from the corporation as returns of capital during its fiscal years ended October 31, 1973 and 1974, respectively.Respondent has never proposed and has not made any adjustments to petitioners' returns with respect to such payments. OPINION Petitioners are asking for summary judgment that the statute of limitations bars the amount of taxes for their years 1968 and 1970 through 1974. Respondent is asking for partial summary that the statute does not bar assessment for those years. Both are proceeding under Rule 121 of this Court's Rules of Practice and Procedure.
Section 6501 of the Internal Revenue Code of 1954 allows the assessment of deficiencies in income taxes within three *153 years after a timely return is filed. However, section 6501(c)(4) permits a taxpayer and the respondent before the expiration of such three-year period to consent in writing to extent the period for assessment. In the instant case there are timely consents, and the period as ultimately extended, was to June 30, 1979. The deficiency notices were timely mailed by respondent to petitioners on June 28, 1979. The dispute centers on the meaning to be accorded restrictive language in the combined consent covering the years here involved, which the parties executed April 1977. That restricted language reads as follows: This agreement is limited to the tax effort resulting from any adjustments to distributions from Milwaukee Brewers Baseball Club and Milwaukee Brewers Baseball Club, Inc. and includes any amount resulting from statutory computations and recomputations based on such adjustments. (Emphasis supplied.) The dispute further narrows to the meaning to be accorded the two emphasized words "distributions from." Petitioners contend that the distributions contemplated by the restrictive language were confined to those of money or property from the partnership and the corporation; *154 that the adjustments in statutory notices were not with respect to any money or property distributed to them by either of the Brewers entities but were rather with respect to petitioner's limited partner's share of the partnership's operating loss and its loss on the disposition of section 1231 assets and with respect to his share in such losses that had been first picked up by the subchapter S corporation and then by him as a stockholder of that corporation. Petitioners stress that the Code deals separately and distinctly with distributions to partners in sections 731 to 736, and with distributions to stockholders of subchapter S corporations in section 1375, while other sections are concerned with distributive share of partners and the undistributed income of subchapter S corporations. Respondent, on the other hand, contends that the term "distributions" includes not only distributions of money and property but also distributions of income, losses, and related items. Both sides cite and rely upon Constitution Publishing Co. v. Commissioner, 22 B.T.A. 426 (1931), a case involving a dispute over the period to which a waiver of the statute of limitations applied. *155 The Board there said (22 B.T.A., 428-429): If the language used were clear and without ambiguity * * * we can not resort to any rules of construction to give the waiver a different meaning. We are without the power of a court of equity and we can not substitute another consent for that expressed by the parties. We can not reform the instrument, although both parties intended something else. On the other hand, if the expression used and the language of the instrument is merely ambiguous, the rules of construction with respect to doubtful or ambiguous contracts or documents are applicable here. Upon this ground we have the right and it is our duty to determine what period the parties intended by the expression used. An instrument is clearly ambiguous and is open to construction when its words, taken literally, lead to absurdity or have no meaning or when two meanings could be given. * * * It is a primary rule of construction of documents that the Court must if possible ascertain and give effect to the mutual intention of the parties and in doing this greater regard is to *156 be had to the clear intent of the parties than to any particular words which they may have used in the expression of their intent. * * * In construing the instrument so as to arrive at the intention of the parties we must do so in the light of the circumstances surrounding the parties when the instrument was executed. We should place ourselves, as nearly as may be, in the situation of the parties so as to view the circumstances as they viewed them and in doing so we are better enabled to judge the meaning of the language used. * * * It is true, as petitioners contend, that the term "distributions," taken in light of provisions of the Code dealing with partnerships and subchapter S corporations, could refer only to actual distributions of money or property, as contrasted with distributive shares of partnership income or losses, or the undistributed income of a subchapter S corporation.Yet, if the construction sought by petitioners were adopted it would lead to an absurdity or render the consents without meaning. This is for the reason that the partnership had never made a distribution of money or property to petitioner, and the corporation had made only two cash distributions *157 to him, as returns of capital, which distributions had never been the subject of any proposed adjustment. On the other hand, the only adjustments to the returns of the partnership and the corporation had to do with the allocation of purchase price to player contracts and their amortization and the treatment of losses on the disposition of section 1231 asserts, which would only impact on petitioner's shares of the reported losses of the two Brewers entities and would not result in the distribution of any money or property to him. Petitioner and his attorney must have been aware of the adjustments contemplated by respondent, as the somewhat lengthy findings disclose. These considerations operate, it is believe, to cast a cloud of ambiguity upon the term "distributions" in the restrictive language of the consents, rendering it necessary to probe the intentions of the parties with regard to this term at the time it first crept in, which was in the first consent for the year 1972. Up until that time, the language employed would have clearly permitted the adjustments which are now in dispute. There must have been some reason for the change in the restrictive language employed in the *158 consents. On this record that reason cannot be discerned with the requisite certainty. It is believed that taking testimony, from both sides, subject to cross-examination, is the means most surely calculated for the Court to put itself in the situation of the parties, as the Constitution Publishing case says should be done. There is thus a disputed issue of material fact, the intention of the parties; and in that circumstance, summary judgment under Rule 121 is not appropriate. Petitioners' motion for summary judgment and respondent's motion for partial summary judgment should be denied. An appropriate order will be entered.